JEFFERSON D. SMITH, Appellant, v. VIRGINIA V. EGAN et al.

Division One, June 2, 1914.

1. **NEAREST BLOOD KIN: As Used in Deed.** The words "nearest blood kin" used in a deed, without any other words of limitation or restriction, mean the father and mother.

2. ————: ————: **Conveyance to Daughter and Nearest Blood Kin.** Under a deed by parents to a daughter and "to her nearest blood kin," without any other words of limitation or restriction, the title, on the daughter's death without children or other descendants, went to her surviving parents, and not to her brothers and sisters, since her parents were the "nearest blood kin."

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*Harvey & Bellamy* for appellant.

(1) Mary Margaret Smith, even though *non compos mentis,* was capable of taking as grantee in the deed to her from her mother and father, Nancy J. and Paschal E. Smith. Washburn on Real Property (3 Ed), p. 240; Tiedeman on Real Property, sec. 797;

9 Am. & Eng. Ency. Law (2 Ed.), p. 131. (2) The deed from Nancy J. and Paschal E. Smith to Mary Margaret Smith was placed on record and the burden of proof is on defendants to show that such deed was not delivered to her or to some third person for her benefit. There is no evidence in the record to that effect. Burke v. Adams, 80 Mo. 504; Standiford v. Standiford, 97 Mo. 231; Sneathen v. Sneathen, 104 Mo. 202; Coulson v. Coulson, 180 Mo. 709; Cook v. Newby, 213 Mo. 271; Chambers v. Chambers, 227 Mo. 262. (3) The deed from Nancy J. and Paschal E. Smith is not testamentary in its character. If the grantor intended that the title should pass, *eo instanti*, upon execution to the grantee, it is a deed and this although the enjoyment is postponed until after the death of the grantor. If the instrument pass a present interest in the property, it is sufficient. 9 Am. & Eng. Ency. Law (2 Ed.), 91; O'Day v. Meadows, 194 Mo. 588; Dozier v. Toalson, 180 Mo. 552; Sims v. Brown, 158 S. W. 624. (4) "A covenant to stand seized to uses occurred where the owner of a freehold estate covenanted to hold the legal title in trust for the use of his child, wife, or kinsman; and this trust was enforced in equity, but only in case the consideration was blood or marriage. The statute of uses executed the use, and thereafter this covenant came to be used as a form of conveyance." 9 Am. & Eng. Ency. Law (2 Ed.), p. 101; 24 Ib., pp. 435-6; R. S. 1909, sec. 2876. The deed in controversy had a covenant to stand seized to the use of Mary Margaret Smith and her nearest blood kin, reserving a life estate in the donors. They expressly provided in this deed that they would stand seized to their own use during their natural lives and the natural life of each of them, and after the decease of both of them, to the use of said Mary Margaret Smith and her nearest blood kin, such blood kin, as we interpret it, to be those at the decease of the donors, notwithstanding Mary Margaret Smith should die be-

fore they died. (5) But suppose we concede that Nancy J. and Paschal E. Smith intended by their said deed that if Mary Margaret Smith should die before both or either of them, then those who answered to the description of the nearest blood kin to said grantee at the date of her said death should take the remainder, would said Nancy J. and Paschal E. Smith be the nearest blood kin of their said daughter? We have been unable to find any authority in our State which has so held. We admit that many of our sister States have followed the civil law rule and held that the father and mother are the nearest blood kin of a deceased son or daughter, to the exclusion of the brothers and sisters. But our courts have not so determined. And why should they? Is there any more justice or equity in following the rule of the civil rather than of the common law or of our Statute of Descents and Distributions? Our legislature, in the enactment of Sec. 2872, R. S. 1909, which abolishes estates in fee tail, provided that "the remainder shall pass in fee simple absolute to the persons to whom the estate tail would, on the death of the first grantee, devisee or donee in tail, first pass according to the course of the common law, by virtue of such devise, gift, grant or conveyance."

*Duggins & Duggins* and *Virgil V. Huff* for respondents.

(1) The delivery of a deed is essential to its operation as a conveyance, and the grantee must have accepted it. Hall v. Hall, 107 Mo. 107. (2) The act of delivery must be with the intent, on the part of the grantor, to divest himself of title, and it must have been accepted by the grantee with the intent to take the title as indicated in the deed. McNear v. Williamson, 166 Mo. Mo. 367; Bunn v. Stuart, 183 Mo. 383. (4) The act of recording must be accompanied by evidence

of other acts or declarations showing an intention to deliver the deed, before a delivery can be presumed. Griffin v. McIntosh, 176 Mo. 397; 13 Cyc. 569, par. (C); 2 Jones, Real Prop., sec. 1293.    (5)   To constitute a deed, the actual title to the land must pass, *in praesenti.* The instrument in question fails to meet this requirement. . If the instrument indicates . what the maker wishes done with his property after his death, it is testamentary.    Christ v. Kuehne, 172 Mo. 125; Murphy v. Gabbert, 166 Mo. 601; Aldridge v. Aldridge, 202 Mo. 575; Griffin v. McIntosh, 176 Mo. 397; Terry v. Glover, 235 Mo. 552; Sims v. Brown, 252 Mo. 66. (6)   Before the death of Mary Margaret Smith it was uncertain who would be her "nearest blood kin" at the time of her death, which uncertainty rendered the remainder over after the life estate limited to her contingent.    At her death this uncertainty became certain, and the contingent remainder in her "nearest blood kin" when it became certain who they would be, became immediately a vested remainder in these persons.    Tiedeman, Real Prop., p. 323, par 403; 2 Washburn Real Prop. (6 Ed.), par. 1556; Dickerson v. Dickerson, 211 Mo. 488; Tindall v. Tindall, 167 Mo. 225.   (7)   It is the present capacity of taking effect in possession, if the  possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder.    Byrne v. France, 131 Mo. 639; Chew v. Kellar, 100 Mo. 362; Tindall v. Tindall, 167 Mo. 226. (8)   The terms "nearest blood kin," when used as an ultimate limitation in a conveyance of real estate, *simpliciter,* that is, without reference to any other description or designation, does not refer to those who take under the Statute of Descents and Distributions, but to those persons who are nearest in degree of consanguinity as computed by the civil law.    Elmsley v Young, 2 M. & K. 870; Withy v. Mangles, 10 Clark &

Finnelly Reports, 215; 2 Jarman on Wills, p. 112, par. 953, p. 114, par. 955; Swasey v. Jacques, 144 Mass. 136, 59 Am. Rep. 65; Locke v. Locke, 45 N. J. Eq. 97; Fargo v. Miller, 150 Mass. 225, 5 L. R. A. 660; Blagge v. Balch, 162 U. S. 464; Keniston v. Mayhew, 169 Mass. 166; Redmond v. Burroughs, 63 N. C. 245; Davenport v. Hasel, Busby's Eq. (N. C.) 29; In re Evirett's Estate, 195 Pa. St. 454; Adee v. Campbell, 79 N. Y. 52; 2 Kent Com., 423, 424, 414; Van Cleve v. Van Fossen, 73 Mich. 345; Wetter v. Walker, 62 Ga. 145; Harraden v. Larabee, 113 Mass. 431; Jones v. Oliver, 3 Ired. Eq. 369, 371; Simmons v. Gooding, 5 Ired Eq. 382, 390; 2 Underhill on Wills, p. 836, sec. 626. (9) Paschal E. Smith and Nancy J. Smith, father and mother of Mary Margaret Smith, were at the time of her death, nearer of kin than her brothers, sisters, or the descendants of deceased brothers and sisters. 4 Kent Com. (14 Ed.), 393, 401, 413; Swasey v. Jaques, 144 Mass. 136.

WOODSON, P. J.—This is an action of ejectment to recover the possession of one-ninth interest in eighty acres of land situated in Saline county. The petition was in the usual form, and the answer was a general denial and an equitable defense. The judgment of the circuit court was in favor of the defendant, and the plaintiff appealed the cause to this court.

The facts are practically undisputed and are as follows:

On and long prior to March 26, 1899, Paschal E. Smith and Nancy J. Smith were husband and wife, and were the parents of ten children—three of whom were dead, all leaving surviving children. Another one of them was named Mary Margaret Smith, who was an invalid and an imbecile. The plaintiff and defendant were also their children.

Upon the date mentioned Paschal E. Smith and his wife, Nancy J. Smith, signed and acknowledged a

certain deed, the one in controversy in this suit. This deed describes two hundred and eighty acres of land, eighty of which is the land in controversy. The consideration expressed in the deed is one dollar, "and the further consideration of love and affection."

This deed, as previously stated, was from Nancy J. Smith and Paschal E. Smith as parties of the first part, and Mary Margaret Smith as party of the second part, and recites that the parties of the first part "remise, release and forever quitclaim unto said party of the second part," 280 acres of land therein described, with the following clause therein, to-wit: "It is expressly understood and agreed that said parties of the first part will henceforth stand seized of the lands above described, with all the privileges and appurtenances to the same belonging for the use and purposes following, to-wit: to the use of the said parties of the first part during their natural lives and the natural life of each of them, without impeachment of waste and after the decease of both of the said parties of the first part to the use of Mary Margaret Smith and to her nearest blood kin." The habendum clause contains this language: "To have and to hold the same, with all the rights, immunities, privileges and appurtenances thereto belonging unto the said party of the second part, and to her nearest blood kin forever."

This deed was duly recorded, but this record contains no direct evidence that it was delivered to Mary Margaret Smith, the grantee, or that the grantors knew that it was recorded.

Mary Margaret Smith died without issue, September 9, 1899. Her father, Paschal E. Smith, died February 16, 1903, and her mother, Nancy J. Smith, died July 5, 1907.

Shortly after Mary Margaret Smith departed this life, her father and mother, the grantors, in the deed previously mentioned, divided said two hundred

and eighty acres of land among four of their other children, and in so doing they conveyed to the defendant, Virginia V. Egan, the eighty acres in controversy, by deed dated December 11, 1899.

I. The appellant contends that the deed of March 26, 1899, from Paschal E. Smith and wife, to Mary Margaret Smith, their daughter, vested in her and her nearest blood kin forever, the remainder of the entire two hundred and eighty acres of land described therein, and that the deed of Paschal E. Smith and wife, dated December 11, 1899, conveying the eighty acres in controversy to their daughter, the respondent, was inoperative because they had previously conveyed the title thereto to Mary Margaret Smith, and he being her brother, he inherited from her one-ninth of the two hundred and eighty acres, and consequently is entitled to one-ninth of the eighty involved in this suit.

Counsel for respondent contends:

"First, that there is no evidence to show any delivery of the deed to Mary Margaret Smith; and that there being no evidence to show that either Mr. Smith or Mrs. Smith ever recorded the deed or knew of its record, the subsequent deeding of the property to their other children negatives any delivery or knowledge thereof.

"Second. That the said deed is testamentary in its character and consequently inoperative as a deed.

"Third. That if the title passed under said deed to Mary Margaret Smith, then at her death, her father, Paschal E. Smith and her mother, Nancy J. Smith, were her nearest blood kin and met the terms of said deed; and the full title immediately, upon the death of their daughter, Mary Margaret Smith, fully vested in her said father and mother."

In support of these respective contentions counsel have presented and discussed many legal propositions

in support thereof; but in the view we take of the case it will be necessary to decide but one of them, for the reason it completely disposes of the entire case.

Counsel for appellant take the position that the words "to the use of Mary Margaret Smith and to her nearest blood kin" found in the granting clause of the deed, and the following contained in the habendum clause thereof, viz.: "To have and to hold the same, with all the rights, immunities, privileges and appurtenances thereto belonging unto the said party of the second part and to her nearest blood kin forever," are words of inheritance within the meaning of our Statute of Descents and Distributions; and, therefore, they should be construed to mean that the father and mother and the brothers and sisters of Mary Margaret Smith were equally close or near blood kin to her, and that when she died they inherited the two hundred and eighty acres of land in equal parts.

Counsel frankly admit that they have been unable to find any authority supporting their position; but insist that the father and mother bear no closer blood relationship to their children than do brothers and sisters bear to each other.

We cannot lend our concurrence to that contention. A child is of the blood and flesh of the father and mother, and of course that is the closest blood relationship that exists. [4 Kent Com. (14 Ed.), 396, 401, 413; Swasey v. Jaques, 144 Mass. 135.]

As well stated by learned counsel for respondent:

"The terms 'nearest blood kin,' when used as an ultimate limitation in a conveyance of real estate, *simpliciter*, that is, without reference to any other description or designation, does not refer to those who take under the Statute of Descents and Distributions, but to those persons who are nearest in degree of consanguinity as computed by the civil law."

This view of the law has been announced by many courts of this and other countries. [Elmsley v. Young,

2 My. & K. 1. c. 87; Withy v. Mangles, 10 C. & F. 215; 2 Jarman on Wills (6 Ed. — Sweet), pp. 1604-1607; Swasey v. Jaques, 144 Mass. 135, 59 Am. Rep. 65; Locke v. Locke, 45 N. J. Eq. 97; Smith v. Campbell, 19 Ves., Jr., 400, G. Coop. 275; Fargo v. Miller, 150 Mass. 225, 5 L. R. A. 690; Blagge v. Balch, 162 U. S. 439, 1. c. 464; Keniston v. Mayhew, 169 Mass. 166; Redmond v. Burroughs, 63 N. C. 242, 1. c. 245; Davenport v. Hassel, Busbee's Eq. (N. C.) 29; In re Everitt's Estate, 195 Pa. St. 1. c. 454; Adee v. Campbell, 79 N. Y. 52; 2 Kent Com. 423, 424, 414; 4 Kent Com. (14 Ed.), 395, 401, 413; Van Cleve v. Van Fossen, 73 Mich. 342; Wetter v. Walker, 62 Ga. 142; Haraden v. Larrabee, 113 Mass. 431; Jones v. Oliver, 3 Ired. Eq. 369, 371; Simmons v. Gooding, 5 Ired. Eq. 382, 390; 2 Underhill on Wills, p. 836, sec. 626.]

Entertaining these views of the law governing this case it must necessarily follow therefrom that upon the death of Mary Margaret Smith, whatever title she had in the two hundred and eighty acres of land, under the express terms of the deed conveying it to her, passed to and became vested in her father and mother, and that the deed executed by them on December 11, 1899, conveyed the eighty acres in question to their daughter, the respondent in this case.

We are, therefore, of the opinion that the judgment of the circuit court should be affirmed; and it is so ordered. All concur.