SOMERSET ORPHANS COURT.

## IN THE MATTER OF THE ESTATE OF MERCIE J. YOUNG, DECEASED.

Decided November 29, 1932.

For the executors and first cousins, *Hugh K. Gaston.*

For the second cousins, *Peer & Mahr, Ryman Herr* and *Arthur I. Robinson.*

REGER, J. The final account of the executors of the last will and testament of Mercie J. Young, deceased, was passed and allowed by this court on September 30th, 1932, and a petition is now presented to the court for an order of distribution of the residue of the estate of decedent.

From the stipulation of facts filed, it appears that there remains in the hands of the executors to be disposed of under the residuary clause of said will, the sum of $13,769.39, and that the testatrix left her surviving no brother or sister, nor the issue of a brother or sister, no father or mother, no uncle or aunt, but that she left her surviving seventeen first cousins on the paternal side and one first cousin on the maternal side, and that she also left her surviving a number of children of deceased first cousins and others who were related in a more remote degree than first cousins, in all, thirty-seven persons in addition to the eighteen first cousins.

The determination of the questions raised by this application requires a construction of the residuary clause of the will of decedent, which reads as follows:

"All the rest, residue and remainder of my estate I give, devise and bequeath to my next of kin to be divided between them equally as nearly as may be, share and share alike."

The principal question presented is: Do the first cousins take under this bequest to the exclusion of those related in a more remote degree?

On behalf of the first cousins it is contended that the phrase "next of kin" should be construed as meaning the nearest in blood to the decedent; while on behalf of the other relatives it is claimed that the phrase should be construed to mean those who in cases of intestacy take under the New Jersey statute of distribution.

The particular section of our statute of distribution which it is claimed should control the distribution reads as follows:

"If there be no husband or widow, child or any legal representative of any child, nor a parent, brother or sister, nor the representative of a deceased brother or sister, then all of the estate to be distributed equally to the next of kindred, in equal degree, of or unto the intestate and their legal representatives as aforesaid." *Pamph. L.* 1918, *ch.* 63, *p.* 181.

Apparently the appellate courts of New Jersey have not construed the words "next of kin" standing alone and unqualified in a bequest by will of personal property, but the question has been passed upon by the courts of other states in this country and by the English courts. There is a hopeless conflict of authority in the decisions of these courts.

One line of cases hold that the words "next of kin" mean the nearest blood relations according to the law of consanguinity, and another line of cases hold that the words "next of kin" mean those entitled to take under the statutory distribution of intestate estates.

In support of the rule last mentioned it is argued that the words "next of kin" have acquired a technical meaning; that that technical meaning requires distribution according to the statute regardless of whether they be in fact nearest of kin, and that these words must be construed to have been used in this technical sense rather than in their popular and ordinary sense.

Support for this argument is found in several cases cited from other jurisdictions.

Among these cases are: *Slosson* v. *Lynch,* 43 *Barb.* (*N. Y.*) 147; *Murdock* v. *Ward,* 67 *N. Y.* 387; *Luce* v. *Dunham,* 69 *Id.* 36; *Tillman* v. *Davis,* 95 *Id.* 17; *New York Life Insurance Co.* v. *Hoyt,* 161 *Id.* 1; *New York Life Insurance Co.* v. *Winthrop,* 237 *Id.* 93; *Godfrey* v. *Epple,* 100 *Ohio St.* 447; *Close* v. *Benham,* 97 *Conn.* 102.

In view of the numerous decisions that next of kin is synonymous with nearest of kin, it would appear from a careful reading of the cases above cited that the meaning attributed to the words next of kin in some of these cases is a forced and strained construction to meet the exigencies of the particular case and to prevent those relatives by blood or marriage from being disinherited who would ordinarily have been the natural objects of testator's bounty and who if he had died intestate would have shared in his estate.

It is a well-recognized rule of construction that all words contained in a will must be given effect so far as possible; that doubts must be resolved in favor of the testator having said what he meant; and that when words are plain and clear when read in their ordinary sense, they must control. *Kutschinski* v. *Sheffer,* 109 *N. J. Eq.* 659; 158 *Atl. Rep.* 499; *Woodruff* v. *White,* 78 *N. J. Eq.* 412; 79 *Atl. Rep.* 304.

As was said by Vice-Chancellor Garrison in the case last above cited "the words used in a will must be taken in their natural meaning; the court is called upon to construe what the testator has said and not to supply language, and thereby make him say what he did not say."

If it be conceded that technical terms used in a will must be given their technical meaning I am unable to find that the words "next of kin," when used in a bequest, have acquired any technical meaning in New Jersey other than what the words themselves import.

"Next" means nearest. "Kin" means blood relationship. Next of kin, therefore, means nearest blood relations. 2 *Jarm. Wills* (*5th ed.*) 643.

In the case of *Swasey* v. *Jaques,* 144 *Mass.* 135, Judge Field, speaking for the court, said: "It is certainly difficult to distinguish between the expressions 'next of kin,' 'nearest of kin,' 'nearest kindred' and 'nearest blood relations,' and primarily the words indicate the nearest degree of consanguinity and they are perhaps more frequently used in this sense than in any other."

In the leading English case of *Elmsley* v. *Young,* 2 *Myl. & K.* 780, it was held that the phrase next of kin in an indenture of trust, applied to the next of kin in the stricted sense of the term including persons entitled by representation under the statute. In this case Lord Cottenham said: "If next of kin means those who would take under the statute, it must include in many cases those who are not next of kin."

This same principle was laid down by the House of Lords in the case of *Wilhy* v. *Mangles,* 10 *Cl. & F.* 215, and settled the question in England.

In *Clark* v. *Meck (Mich.),* 28 *L. R. A.* 479, it was held that under a bequest to nearest of kin of testator, his brothers and sisters take to the exclusion of children of deceased brothers and sisters. The finding of the court was expressed in the opinion as follows:

"In the absence of a contrary intent a gift to next of kin is a gift to the nearest of kin in the strictest sense, excluding persons who, under the statute of distribution, would be entitled to take by representation."

To the same effect are the following cases in other jurisdictions: *Leonard* v. *Haworth,* 171 *Mass.* 496; 51 *N. E. Rep.* 7; *Larson* v. *Chicago, &c.,* 160 *Ill. App.* 247; *De-Graffenreid* v. *Iowa Land & T. Co.,* 20 *Olka.* 687; 95 *Pac. Rep.* 624; *Hearn et al.* v. *Hastings et al. (Del.),* 152 *Atl. Rep.* 129; *Morse* v. *Lowe,* 182 *Mich.* 607; 148 *N. W. Rep.* 970; *Redmond* v. *Burroughs,* 63 *N. C.* 242; *Smith* v. *Egan,* 258 *Mo.* 569; 167 *S. W. Rep.* 971; *Ann. Cas.* 1915D, 723.

In New Jersey, Vice-Chancellor Backes, in the case of *Barrett* v. *Egbertson,* 92 *N. J. Eq.* 118; 111 *Atl. Rep.* 326, construed the words "next or nearest of kin on my father's

side" to mean the class nearest in blood. In the opinion of the vice-chancellor he said:

"A gift to 'next of kin,' *simpliciter,* has not received judicial consideration by the courts of this state. In England, after a long struggle, it was finally decided in favor of the civil law acceptation, as against the definition of the statute of distribution, that 'next of kin' means the class nearest in blood. *Elmsley* v. *Young,* 2 *Myl. & K.* 780; *Withy* v. *Mangles,* 10 *Cl. & F.* 215. In this country, Massachusetts, in *Swasey* v. *Jaques,* 144 *Mass.* 135; *Fargo* v. *Miller,* 150 *Mass.* 225; *Keniston* v. *Mayhew,* 169 *Mass.* 166; *Leonard* v. *Haworth,* 171 *Mass.* 496; North Carolina, in *Jones* v. *Oliver,* 38 *N. C.* 369; *Simmons* v. *Gooding,* 40 *N. C.* 382; *Harrison* v. *Ward,* 58 *N. C.* 236; *Redmond* v. *Burroughs,* 63 *N. C.* 242; Michigan, in *Blark* v. *Mack,* 161 *Mich.* 545; 126 *N. W. Rep.* 632; Missouri, in *Smith* v. *Egan,* 258 *Mo.* 569; 167 *S. W. Rep.* 97; New Hampshire, in *Galloway* v. *Babb,* 77 *N. H.* 259; Maryland, in *Graham* v. *Whitridge,* 99 *Md.* 248, 289, follow the English rule of construction."

After referring to some of the New York cases hereinbefore cited he said by way of *dictum:*

. "Were I called upon, in the case at hand, for an opinion upon this sharp point, I would be troubled to accept the New York doctrine, for the primary conception of 'next of kin' is the class nearest of blood, and such is the language of the statute, 'to the next of kin in equal degree,' following the rule of the civil law, which is modified by letting into the distribution a remoter degree, not, however, advancing that degree. And to impute to a testator an intention to import into the class of nearest in blood others who are not, without something in the will indicating that intent, would be to write, not to construe, the will. *Duffy* v. *Hargan,* 62 *N. J. Eq.* 558; 50 *Atl. Rep.* 678. A bequest to 'my next of kin' according to the laws of New Jersey, is an illustration of such intention. The North Carolina and Michigan cases argue along this line with impressionable force."

In *Locke* v. *Locke,* 45 *N. J. Eq.* 97; 16 *Atl. Rep.* 49, Vice-Chancellor Bird held a bequest to "nearest relatives" to mean

brothers, to the exclusion of nephews and nieces. He said: "When a testator uses plain everyday English to express his meaning there cannot be any risk of doing violence to his understanding of it by taking him at his word."

Nor do the words as used in the statute of distribution import any different meaning than those who are in fact next of kin. The language of the New Jersey statute is "next of kindred of equal degree of or unto the intestate *and their legal representatives* as aforesaid." The use of the phrase "and their legal representatives" shows that the legislature recognized the distinction between those who were next of kin and those who were of more remote kinship and who are termed their "legal representatives." So that to hold that the testatrix in this case by using the phrase next of kin meant to include not only the next of kindred but their legal representatives as well, would be to give the words a technical meaning not recognized by the statute.

"In *Redmond* v. *Burroughs,* 63 *N. C.* 242, in which it was argued that 'next of kin' are technical words used in the statute of distributions, and so must be given such signification, rather than as meaning nearest of kin, it is said: "If next of kin were the technical words so used in the statute, it would be difficult to resist the argument. But there lies the error. Next of kin are not the words used in said statute to denote those who take. If they were, then only the living nieces and nephews would take as being next, nearest of kin, as between them and the children of deceased nieces and nephews. But the words used are not 'next of kin' but next of kin who are equal in degrees, and those who legally represent them. It will be seen, therefore, that to bring the terms used in the will within the technical words used in the statute of distributions, the words 'and those who legally represent them' would have to be added. We are of the opinion that the terms used in the will, 'next of kin,' mean 'nearest of kin,' and that the living nieces and nephews take to the exclusion of the legal representatives of deceased nieces and nephews."

Nor do I find that the decisions of our New Jersey courts

have given them such a technical meaning when appropriately used in a will in a bequest of personality.

There is a line of cases in New Jersey holding that where a testator directs his estate to be divided among his heirs and the estate consists wholly or in part of personal property, that the word heirs will be construed to mean the next of kin in the sense of distributees under the statute of distribution. *Meeker* v. *Forbes*, 84 *N. J. Eq.* 271; 93 *Atl. Rep.* 887; *Trenton Trust and Safe Deposit Co.* v. *Donnelly*, 65 *N. J. Eq.* 119; 55 *Atl. Rep.* 92; *Welsh* v. *Crater*, 32 *N. J. Eq.* 177; *Scudder* v. *Van Arsdale*, 13 *N. J. Eq.* 109.

It is vigorously contended by counsel for second cousins that because our courts have construed the word "heirs" when used in connection with a bequest of personality to mean distributees under the statute of distribution that the words "next of kin" should be so construed. But this does not necessarily follow. Webster defines the word heir to mean:

"One who receives, inherits, or is entitled to succeed to the possession of any property after the death of its owner; one in whom the title to an estate vests on the death of the proprietor; one on whom the law bestows the title or property of another at the death of the latter."

Bouvier's definition is:

"He who is born or begotten in lawful wedlock, and upon whom the law casts the estate in lands, tenements, or hereditaments immediately upon the death of his ancestor. Thus, the word does not strictly apply to personal estate." 1 *Bouv. Dict.* 746.

So that the courts in construing the word heirs in a bequest of personality are forced to interpret the term as denoting those in whom the law vests that kind of property, namely, those who take personality under the statute of distribution in cases of intestacy; and, where the property to be disposed of is real estate, to interpret the term as meaning those who take under the statute of descent.

So while our courts have interpreted the word "heirs," when used in a bequest of personal property, as equivalent to next of kin, what they mean is that the word heirs in a

bequest of personal property will be construed to mean those who are entitled to take under the statute of distribution. This is clearly indicated by Mr. Justice Dixon, in speaking for the Court of Errors and Appeals in the case of *Leavitt* v. *Dunn,* 56 *N. J. L.* 309; 28 *Atl. Rep.* 590, Mr. Justice Dixon said in that case, referring to the term "heirs:"

"In New Jersey the word has quite uniformly been construed according to the nature of the property dealt with and without much regard to whether it was used in designating original or substituted beneficiaries. When employed in the disposition of personal property it has been generally deemed to indicate the persons appointed by the statute to succeed to such property, citing *Scudder* v. *Van Arsdale,* 13 *N. J. Eq.* 109; *Welsh* v. *Crater,* 32 *Id.* 177; *S. C.,* on appeal, 33 *Id.* 362; *Hayes* v. *King,* 37 *Id.* 1; *Ward* v. *Dodd,* 41 *Id.* 414; *Reen* v. *Wagner,* 51 *Id.* 1; 26 *Atl. Rep.* 467. In the opinions delivered in these cases, the phrase 'next of kin' is frequently used by the judges as their synonym for the word 'heirs' in the disposition of personal property, but what they mean by the phrase is not merely the nearest kinsman, but the distributees under the statute, including both the widow and those who, by the statute, may represent deceased kinsmen."

That construction is required because the word heirs has been in such cases inappropriately used and there being doubt as to the testator's intention it is deemed as most likely to carry out the testator's intention to construe it as a gift to those who would take under the statute. However, if the meaning of the words used by a testator is clear and the words of gift are appropriately used then no forced construction is necessary.

The language of the testatrix in making this bequest is evidential to my mind, too, that she used the term next of kin in its primary sense. She directs the residue of her estate to be divided between her next of kin *equally as nearly as may be, share and share alike.* This language, if distribution were to be made to all those comprehended by the phrase in the statute "next of kindred in equal degree and their legal

representatives," would seem to require an equal division of the residue among the first cousins and the more remote kin, *per capita* and not *per stirpes.* *Scudder* v. *Van Arsdale,* 13 *N. J. Eq.* 110; *Welsh* v. *Crater,* 32 *Id.* 174.

In the case of *Schenck* v. *Vail,* 24 *N. J. Eq.* 538, in the leading case on the descent of real property, our Court of Errors and Appeals construed the New Jersey Statute of Descent which provided that under certain contingencies, if the deceased shall "leave several persons all of equal degree of consanguinity to the person so seized, the said lands shall descend and go to the said several persons of equal degree of consanguinity to the persons so seized, as tenants in common, in equal parts, however remote from the person so seized the common degree of consanguinity may be," &c.

In the argument before the court in that case it was contended that under this statute second cousins were entitled to share in the real estate of decedent with first cousins. Chief Justice Beasley, speaking of this contention, said:

"The statute calls for a distribution in equal parts between 'said several persons.' The proposed doctrine requires a division partly between persons and partly between stocks. The inheritance is to go, *stirpes.* But how does this fulfill the statutory requirement of an equal division among persons? If the estate distributively to two first cousins, and the third passing to the three children of a deceased first cousin, can it be said, with the least propriety of speech, that this is a division between several persons in equal parts? To dispense the property evenly between a number, some taking severally, and others, as a class, taking a single share jointly, would be an equal division; but, just as certainly, it would not be an equal division among individuals. This plaint direction of the statute cannot be rejected."

While the court was there construing a statute the reasoning is equally applicable to the construction of the clause in the will now under consideration.

It is hard to believe that the testatrix intended that the more remote kin should share equally with the first cousins, in other words, that the residue should be divided into fifty-

five parts. Those more remote than first cousins could hardly be said to be the natural object of a testator's bounty. Frequently second and third cousins are hardly known to the ancestor.

The direction of the testatrix that the residue of her estate should be divided equally between her next of kin share and share alike, tends to convince me that she did not intend that it should be distributed to kinsmen more remote than those who were her next or nearest of kin.

All doubts should be resolved in favor of the testatrix having said what she meant. *Marshall, Executors, v. Hadley, 50 N. J. Eq.* 547; *25 Atl. Rep.* 325; *Barnett v. Barnett, 30 N. J. Eq.* 595; *Kutschinski v. Sheffer, 109 Id.* 659; *158 Atl. Rep.* 499.

The recognized fact that the will of Miss Young was drawn by counsel learned in the law, who did not see fit to use the words of the statute, next of kindred in equal degree and their legal representatives, and who did not in the draft of the bequest refer either specifically to the statute of distribution, or generally to the laws of New Jersey, is another indication that it was not the intention that distribution should be made under the statute.

A decree will be made directing distribution to the first cousins living at the date of death of the testatrix, and to the personal representatives of any first cousins who have died since the date of death of the testatrix.